IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEREMY MICHAEL JOHNSON, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| UNIVERSITY OF HOUSTON, | § | CIVIL ACTION NO. |
| UNIVERSITY OF HOUSTON | § | 4:07-CV-1175 |
| POLICE DEPARTMENT, OFFICER | § | |
| ROONEY, OFFICER GABRIEL | § | |
| MCCOURTNEY, CAPTAIN MILLER | § | |
| OFFICER VEGA, CHANCELLOR | § | |
| JAY GOGUE, | § | |
| *Defendants* | § | |

**PLAINTIFF ALLEGES AS FOLLOWS:**

1.      INTRODUCTION.    JEREMY MICHAEL JOHNSON, Plaintiff, complains of the UNIVERSITY OF HOUSTON, the UNIVERSITY OF HOUSTON POLICE DEPARTMENT, OFFICER JOHN ROONEY, OFFICER GABRIEL MCCOURTNEY, CAPTAIN MILLER, OFFICER ISELA VEGA, AND JAY GOGUE, CHANCELLOR (collectively, the "Defendants"), for damages arising out of a false arrest, false imprisonment, other unconstitutional policies and actions, and common law claims arising out an incident which occurred on March 5, 2005.

2.      JURISDICTION.      Plaintiff brings this action against defendants to redress the deprivation of rights secured by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. Sections 1981, 1983, 1985, 1986, and 1988, 42 U.S.C. 2000a and the common law.

3.      Plaintiff is a citizen of Texas.    Defendants UNIVERSITY OF HOUSTON and UNIVERSITY OF HOUSTON POLICE DEPARTMENT are chartered under the laws of Texas and exist only in Texas.  Officer John Rooney (hereinafter referred to as "Officer Rooney"),

Officer Gabriel McCourtney (hereinafter referred to as "Officer McCourtney"), Captain Miller, Officer Isela Vega (hereinafter referred to as "Officer Vega"), and Chancellor Jay Gogue (hereinafter referred to as "Chancellor Gogue") are all citizens of the state of Texas. The matter in controversy exceeds the sum of $100,000.00, exclusive of interest and costs.

4.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. Sections 1981, 1983, 1985, 1986, 1988 and 2000a.

5.      Plaintiff also invokes supplemental jurisdiction of this Court over plaintiff's state claims against defendants for common law violations pursuant to 28 U.S.C. Section 1367 as the common law claims from part of the same case or controversy.

6.      Venue is proper in this District pursuant to 28 U.S.C. Section 1391.

7.      PARTIES.   Plaintiff is a resident of Texas.

8.      Defendant UNIVERSITY OF HOUSTON (hereinafter referred to as "U of H") hired defendants Officer Rooney, Officer McCourtney, Captain Miller, and Officer Vega as agents and employees on the occasion in question.  Agents Officer Rooney, Officer McCourtney, Captain Miller, and Officer Vega were acting in the course and scope of their employment for U of H on the occasion in question.

9.      Defendant, Officers "Rooney", "McCourtney", "Miller", and "Vega" are sued both individually and in their official capacities.   Defendants are police officers who unlawfully violated Plaintiff Jeremy M. Johnson's rights.   Defendant Captain Miller was the supervisor who supervised Officers Rooney, McCourtney and Vega who violated plaintiff's rights.   They are sued both individually and in their official capacities.   At all times pertinent hereto, defendant officers and supervisor were employed by defendant U of H.

10.     At the time of the alleged incident at all times pertinent hereto, the defendants acted under color of law, of a statute, ordinance, regulation, custom, or usage.

11.   FACTS.   On January 27, 2005, Jeremy Michael Johnson, Plaintiff (hereinafter referred to as "Plaintiff Johnson) began the process of contracting with the University of Houston (hereinafter referred to as "U of H") to reserve and rent a room to host his "***March Madness Party.***"

12.   Soon after the process began Plaintiff Johnson received confirmation of his reservation and paid on February 18, 2005, U of H $1406.00 in the form of a cashier's check.   According to the reservation, Plaintiff Johnson paid for the following services: room charge ($150.00), late closing ($60.00), audio visual personnel ($140.00), six (6) hours for the use of U of H police officer services ($840.00), and six (6) hours for use of U of H Police Supervisor's hours ($216.00).

13.   Unfortunately, on the evening of March 5, 2005, U of H did not provide Plaintiff Johnson with all the services he had paid in advance for the "***March Madness Party.***"   According to the reservation's list of paid services, Plainitff Johnson was to have access to the services of six (6) U of H police officers.

14.   However, only five (5) officers reported that evening for duty.   Of the five (5) officers that where in attendance, one (1) officer left during the event, leaving Plaintiff Johnson with only four (4) officers.   Plaintiff Johnson also arranged with Captain Miller a set up that would most effectively secure the premises for the evening.   Only one (1) officer followed the plan.

15.   Prior to the event, it was explained to Plaintiff Johnson, by one of the officers that if there were too many fights, the event would be shut down. Unfortunately, two hours after the party began, two (2) young men attempted to sneak into the party.   The officers were able to apprehend the men, but prior to the apprehension, the officers struggled with the individuals.

16.   After their arrest, the officers re-entered the facility and went inside the ballroom.   Once inside, the officers proceeded to the stage and approached Plaintiff Johnson; he was the deejay

3

for the evening.  Officer Vega instructed Plaintiff Johnson to turn off the music and tell everyone to go home.

17.     When Plaintiff Johnson inquired about the shutting down of the event, the officers would not provide him with an answer, but insisted that everyone had to leave.  Plaintiff Johnson refused to make the announcement, but handed the microphone to Officer Vega, to announce the shut down.

18.     Frustrated that the microphone did not work properly, Officer Vega snatched a second microphone from Plaintiff Johnson saying, ***"Give me the fucking mic!"***  Afterwards, she yelled the following [sic]: ***"Party's over. Get the fuck up out of here. Go home!"***

19.     As disgruntled students complained about receiving refunds, Plaintiff Johnson grabbed the microphone and said BOOO!   At that very moment, Plaintiff Johnson was swarmed by officers, placed in handcuffs, and escorted out of the building.

20.     Plaintiff Johnson was transported to the University of Houston Police Station where Officer Rooney filled out a Violation of University Regulations Report.  Officer Rooney **falsely wrote in his report** that the party was shut down due to all the fights.

21.      Officer Rooney also **falsely wrote** that, after Officer Vega announced that the party was over, Plaintiff Johnson got on the microphone and stated ***"BOO, don't go.  BOO, the police and stay,"*** several times, and the crowd rushed toward the stage, where all the officers were standing. After the paperwork was done at the police station, Plaintiff Johnson was then transported to Harris County Jail where he was charged with the criminal offense of Inciting a Riot.

22.     Unfortunately, being falsely arrested and denied a pre-released bond (due to the alleged severity of the crime), Plaintiff Johnson was forced to remain in jail for approximately 72 hours after his arrest.

23.     Plaintiff Johnson was arrested on Saturday night and was released on Monday morning.

24.     Not only was a criminal charge filed on Plaintiff Johnson, but the officers falsified the Violation Report and forwarded the paperwork to the University of Houston's Assistant Dean of Students.   The report cited Plaintiff Johnson for the following violations of the Disciplinary Code:

> **3.2  Disruption/Obstruction;**
>
> **3.3  Mental or Bodily Harm;**
>
> **3.16 Failure to Comply or Identify;**
>
> **3.21 Violation of Established University Policies and Procedures;**
>
> **3.23 Aiding and Abetting.**

25.     Upon receipt of the above-referenced violations the University of Houston conducted its own investigation and concluded, according to the witnesses (which included two (2) U of H employees and several students who attended the party), that the incident did not happen as reported by  Officer Rooney.    Specifically, the violations that were directed at the officers and the falsified charge for inciting a riot were unfounded and were dismissed by U of H.

26.     Likewise, shortly thereafter, the criminal charge filed in the Criminal County Court at Law Number 14, Harris County, Texas was dismissed for insufficient evidence.

27.     After the dismissal of the criminal case, an expunction was filed and the University of Houston General Counsel agreed that Plaintiff's Petition for Expunction be granted.

28.     At all time pertinent to these allegations, Plaintiff Jeremy Michael Johnson was unarmed and did not pose a threat of death or serious bodily injury to defendant officers.

29.     Officer Vega and the other officers acted with actual malice toward Plaintiff Johnson and with willful and wanton indifference to and deliberate disregard for the statutory and constitutional rights of plaintiff.   Officer Rooney's and Vega's actions and the actions of the other defendant officers constitute unreasonable and excessive use of force and deprivation of liberty without due process of law.

5

30.    Upon information and belief at all times pertinent hereto, U of H permitted and tolerated a pattern and practice of unreasonable use of force by its agent police officers.

31.    Upon information and belief, U of H has maintained a system of review of police conduct which is so untimely and cursory as to be ineffective and to permit and tolerate the unreasonable and excessive use of force by police officers acting in the course and scope of employment for U of H.

32.    The acts, omissions, systemic flaws, policies, and customs of U of H cause police officers employed by them to believe that the excessive and unreasonable use of force would not be aggressively, honestly, and properly, investigated, with the foreseeable result that officers are more likely to use excessive or unreasonable force against plaintiff and others in the future.

**COUNT ONE – VIOLATION OF CONSTITUTIONAL RIGHTS**

33.    Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 32.

34.    The intentional physical injury to Plaintiff Johnson by Defendants Rooney, McCourtney, and Vega violated the rights of plaintiff as guaranteed by the First, Fourth, Fifth, Eight and Fourteenth Amendments to the United States Constitution, for which defendant officers are individually liable

**COUNT TWO – VIOLATION OF CONSTITUTIONAL RIGHTS**

35.    Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 34.

36.    The intentional infliction of physical injury to Plaintiff Johnson by Defendants Rooney, Vega, and Mc Courtney when Plaintiff was unarmed and did not pose a threat of death or serious bodily injury to defendants or others, when defendants had no lawful authority to arrest plaintiff or to use deadly or non-deadly force against him, was done with actual malice toward plaintiff

and with willful and wanton indifference to and deliberate disregard for the constitutional rights of plaintiff. Plaintiff is thus entitled to exemplary damages.

### COUNT THREE – VIOLATION OF STATUTORY CIVIL RIGHTS

37.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 36.

38.     The intentional infliction of physical injury to Plaintiff Johnson by Defendants Rooney, Vega, and McCourtney when plaintiff was unarmed and did not pose a threat of death or serious bodily injury to defendants or others, when defendants had no lawful authority to arrest Plaintiff or to use deadly or non-deadly force against him, was done with actual malice toward plaintiff and with willful and wanton indifference to and deliberate disregard for the statutory civil rights of plaintiff.

### COUNT FOUR – VIOLATION OF CONSTITUTIONAL RIGHTS DEFENDANT UNIVERSITY OF HOUSTON AND OFFICERS ROONEY AND VEGA

39.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1-38.

40.     It was the policy and practice of U of H to employ certain police officers, including defendants Rooney, Vega, McCourtney and Miller as agents described in the foregoing paragraphs.

41.     At all times pertinent hereto, defendant Captain Miller and other unknown supervisors, who supervised the officers who unlawfully violated plaintiff's rights, encouraged and tolerated the policies and practices described in the foregoing paragraphs. Captain Miller refused to adequately train, direct, supervise, or control defendant officers so as to prevent the violations of plaintiff's constitutional rights.

42.     At all times pertinent hereto, Defendants Rooney, Vega, and McCourtney were acting within the course and scope of their employment and pursuant to the aforementioned policies and practices of the University of Houston. These policies and practices were enforced by

Defendant Miller and were the moving force, proximate cause, or affirmative link behind the conduct causing the plaintiff's injury. The University of Houston and Defendant Miller are therefore liable for the violation of plaintiffs' constitutional rights by defendants Rooney, Vega and McCourtney.

### COUNT FIVE – CONSPIRACY TO VIOLATE CIVIL RIGHTS

43.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 42.

44.     Defendants Rooney, Vega, McCourtney and Miller conspired to violate plaintiff's statutory civil rights as more fully described in the foregoing paragraphs in violation of 42 U.S.C. Section 1989, for which defendants Rooney, Vega, McCourtney and Miller are individually liable.

### COUNT SIX – ASSAULT AND BATTERY

45.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1-44.

46.     The infliction of physical injury, verbal abuse, mental cruelty, and use of non-deadly force by defendants Rooney, Vega, McCourtney and Miller, when defendants had no lawful authority to arrest plaintiff, when plaintiff was unarmed and did not pose a threat of death or serious bodily injury to defendants or others, was without justification or provocation, was excessive, and constitutes assault and battery for which defendants Rooney, Vega, McCourtney and Miler are individually liable.

47.     As a proximate result of the assault and battery committed by defendants Rooney, Vega, McCourtney and Miller, plaintiff has sustained permanent injuries and has incurred medical bills and other expenses. These injuries have caused and will continue to cause plaintiff great pain and suffering, both mental and physical.

### COUNT SEVEN – ASSAULT AND BATTERY

48.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 47.

49.     The intentional infliction of physical injury and verbal abuse of plaintiff by defendants Rooney, Vega, McCourtney and Miller when plaintiff was unarmed and did not pose a threat of death or serious bodily injury to defendants or others, when defendants did not have lawful authority to arrest plaintiff or to use deadly or non-deadly force against him, was done with actual malice toward plaintiff and with willful and wanton indifference to and deliberate disregard for human life and the rights of plaintiff.  Plaintiff is thus entitled to exemplary damages.

### COUNT EIGHT – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

50.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 49.

51.     Defendants Rooney, Vega, McCourtney and Miller intentionally inflicted physical injury and verbally abused plaintiff in a manner that was extreme, outrageous, and unjustified, and caused plaintiff to suffer physical and emotional distress for which defendants Rooney, Vega, and McCourtney  are individually liable.

### COUNT NINE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

52.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 51.

53.     The intentional infliction of physical injury and verbal abuse of plaintiff by defendants Rooney, Vega, and McCourtney were unjustified and done with actual malice and wanton indifference to and deliberate disregard for human life and the rights of plaintiff.   Plaintiff is thus entitled to exemplary damages.

### COUNT TEN – RESPONDEAT SUPERIOR LIABILITY

54.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 53.

55.     At all times pertinent hereto, defendants Rooney, Vega, and McCourtney were acting within scope of their employment as officers for the University of Houston.

56.     The University of Houston is liable for compensatory damages under the doctrine of respondeat superior for the intentional torts of defendants Rooney, Vega and McCourtney committed within the scope of their employment.

## COUNT ELEVEN – RESPONDEAT SUPERIOR LIABILITY

57.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 56.

58.     The University of Houston, through its agents, expressly authorized defendants Rooney, Vega and McCourtney to use excessive force; knew, through its agents, that the defendant officers had a propensity for committing intentional torts, using excessive force in the line of duty; and acquiesced in the defendants' wrongful conduct.    Plaintiff is entitled to exemplary damages against the University of Houston for the malicious conduct of defendants.

## COUNT TWELVE – NEGLIGENCE

59.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 58.

60.     Defendants Rooney, Vega, and McCourtney, while acting as agents and employees for the University of Houston in their capacity as police officers for the University of Houston, owed a duty to Plaintiff to perform their police duties without the use of excessive force.    Defendants use of force upon Plaintiff, when Plaintiff was unarmed and did not pose a threat of death or serious bodily injury to defendants or others, constitutes negligence for which defendants Rooney, Vega and McCourtney are individually liable.

6l.     Defendants Rooney, Vega, and McCourtney use of force upon plaintiff when defendants had no lawful authority to arrest plaintiff or to use force against him constitutes negligence for which defendants are individually liable.

62.     As a proximate result of defendants' negligent use of excessive force, plaintiff has sustained permanent injuries and he has incurred medical bills and other expenses.   These injuries have caused and will continue to cause plaintiff pain and suffering, both mental and physical.

### THIRTEEN – NEGLIGENCE

63.     Plaintiff incorporate herein by reference the allegations contained in paragraphs 1 through 62.

64.     The negligent infliction of physical injury to plaintiff by defendants Rooney, Vega, and McCourtney when plaintiff was unarmed and did not pose a threat of death or serious bodily injury to defendants or others, and when defendants had no lawful authority to arrest plaintiff or to use deadly force against him, was done with willful and wanton indifference to and deliberate disregard for human life and the rights of plaintiff.   Plaintiff is thus entitled to exemplary damages.

### COUNT FOURTEEN – NEGLIGENCE

65.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 64.

66.     At all times of the alleged incident defendants, Rooney, Vega, and McCourtney were acting within the course and scope of their employment as officers of the University of Houston.

67.     The University of Houston is liable for compensatory damages under the doctrine of respondeat superior for the negligence of defendants committed within the course and scope of employment.

### COUNT FIFTEEN – NEGLIGENCE

68.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 67.

69.     The University of Houston owed a duty to plaintiff to train and supervise and otherwise control police officers it hires as agents in the use of deadly force and other matters incidental to the exercise of police functions.  The University of Houston failed to provide adequate training, supervision, and control of defendants, Rooney, Vega, and McCourtney, which failure constitutes negligence.

70.     As a proximate result of the University of Houston's negligence failure to provide adequate training, supervision, and control of defendants Rooney, Vega and McCourtney, plaintiff has sustained permanent injuries and he has incurred and will continue to incur medical bills and other expenses.   These injuries have caused and will continue to cause plaintiff pain and suffering, both mental and physical.

### SIXTEEN – NEGLIGENCE

71.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 70.

72.     The University of Houston's failure to provide adequate training and supervision to its police officer agents constitutes a willful and wanton indifference and deliberate disregard for human life and the rights of private citizens, including Plaintiff.  Plaintiff is thus entitled to exemplary damages.

### EIGHTEEN – MALICIOUS ABUSE OF PROCESS, FALSE ARREST, AND FALSE IMPRISONMENT

73.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 72.

74.     Defendants Rooney, Vega, and McCourtney used criminal process against plaintiff in order to intimidate him and to dissuade plaintiff from asserting his rights against defendants and in order to cover up their own wrongdoings and to avoid civil liability for their own acts.

75.     Defendants Rooney, Vega, and McCourtney falsely arrested and falsely imprisoned plaintiff.

76.     As a proximate result of this malicious abuse of process, false arrest, and false imprisonment, plaintiff suffered the damages as aforesaid.

## COUNT NINETEEN – TORTIOUS INTERFERENCE

77.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 76.

78.     The U of H officers **tortiously interfered** with the business relationship between U of H and Plaintiff Johnson.   For instance, the officers **intentionally** shut down a party, **illegally arrested** Plaintiff Johnson, and **falsified an offense report** so they could end their shift early. *Taylor v. Russell*, 181 F. Supp. 2d 668, 672-673 (E.D. Tex. 2001) (*citing Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995))

79.     As a result of the relationship, between Plaintiff Johnson and U of H, the relationship was severely tainted and Plaintiff Johnson suffered great loss.   Not only did Plaintiff Johnson suffer a financial loss, but he has experienced   mental anguish and will in reasonable probability continue to do so in the future because of the nature and severity of his injuries.

80.     Arguably, the officers acted in a manner "so contrary to the [State's] best interest that their actions could only have been motivated by personal interests." *Taylor v. Russell*, 181 F. Supp. 2d 668, 672-673 (E.D. Tex. 2001) (*citing Holloway*, 898 S.W.2d at 796.)   For instance, the officers knew that they were to arrive at 9:00 p.m. and leave at 2:00 a.m. but intentionally shut down the party, so that they could go home, sooner.

81.     Clearly, the officers failed to follow the proper protocol and falsified their offense report to temporary justify the arrest.  Due to the illegal arrest, the officers tortiously  interfered with the business relationship between Plaintiff Johnson and the University of Houston.

## COUNT TWENTY – MALICIOUS PROSECUTION

82.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 81.

83.     Moreover, Plaintiff Johnson was **falsely arrested** and charged for a criminal offense (Inciting a Riot) that he had not committed. In Texas to maintain a malicious prosecution charge, a plaintiff must prove that criminal proceedings were commenced against plaintiff; prosecution was caused by the defendant or through defendant's aid or cooperation; prosecution terminated in the plaintiff's favor; plaintiff was innocent; defendant lacked probable cause to bring about the proceeding; defendant acted with malice; and plaintiff suffered damages. *See Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999).

84.     Instead of just submitting the alleged violations against Plaintiff Johnson, the officers falsified their offense report to file a criminal charge against him.  Due to the falsified information, the State prosecutor for Harris County, Texas accepted the charge based on the report submitted by the police officers for the University of Houston.   Fortunately, after investigation and the aid of witnesses, the case was dismissed because of insufficient evidence. Arguably, the agents for the University of Houston lacked probable cause to bring about the criminal proceedings **and** to file the violations in relation to the Disciplinary Code.   In accordance with *Kerr v. Lyford,* it is quite obvious that the officers, agents for the University of Houston, acted with malice; Plaintiff Johnson suffered mental and financial damages.

85.     From the above-mentioned facts, the U of H officers caused the malice, by **falsely arresting and falsely seeking charges** against Plaintiff Johnson, which commenced criminal proceedings.

86.     However, these proceedings were terminated in Plaintiff Johnson's favor: (1)  Plaintiff

Johnson was found innocent because U of H dismissed all of the violations filed by the officers

regarding Inciting a Riot which resulted in the criminal charge being dismissed; (2)  The officers

**lacked probable cause** to arrest and prosecute Plaintiff Johnson because there were no other

facts or circumstances that supported the facts that Plaintiff Johnson had committed a criminal

offense. *United States v. Maslanka*, 501 F.2d 208, 212 (5th Cir. 1974) (*quoting Beck v. Ohio*, 379

U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964)); and (3) The officers acted with malice

because they **"illegally arrested"** Plaintiff Johnson and **"falsified the incident report."**

87.     Additionally, qualified immunity does not protect malicious prosecution.  The officers,

for the University of Houston are not immune from suit or liability because the constitutional

right to be free from **bad faith or malicious prosecution** is sufficient to support a damage

judgment against state law enforcement officials under 42 U.S.C. § 1983. *See Goodson v. City of

Corpus Christi*, 202 F.3d 730 (5th Cir. 2000). This right was clearly violated at the time of the

arrest and prosecution of Plaintiff Johnson. *See Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299,

1305 (5th Cir. 1995) (*citing Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir. 1972)).

88.     In assessing a qualified immunity claim, the district court must determine whether (1) the

plaintiffs have asserted a constitutional or statutory violation; (2) the law regarding the alleged

violation was clearly established at the time of the operative events; and (3) the record shows that

the violation occurred, or at least gives rise to *"a genuine issue of material fact as to whether

the defendant actually engaged in the conduct that violated the clearly-established law."*

*Brown v. Nationsbank Corp*., 188 F.3d 579, 587 (5th Cir. 1999) (*citing Kerr v. Lyford,* 171 F.3d

330, 338 (5th Cir. 1999)).

89.     Officer Rooney's actions were unreasonable because he and the other officers that

arrested Plaintiff Johnson **lacked probable cause**.  Plaintiff Johnson was not arrested under the

authority of warrant nor any probable cause that he committed a crime.  Plaintiff Johnson was

arrested because he exercised his freedom of speech and not because a crime had been committed in the presence of the officers.

90.     Moreover, if the officers' conduct violated a clearly established law, the inquiry then becomes whether that conduct was objectively reasonable. *See Brown*, 188 F.3d at 579; *Wren v. Towe*, 130 F.3d 1154, 1159 (5th Cir. 1997). The reasonableness inquiry turns on whether the official's actions "could reasonably have been thought consistent with the rights they are alleged to have violated." *Id*. Likewise, in our case in chief, the officers' conduct of arresting Plaintiff Johnson was not reasonable.   Arguably, the officers lacked probable cause to arrest Plaintiff Johnson.   Plaintiff Johnson was falsely arrested for exercising his constitutional rights. Therefore, the officers are not immune due to the fact that Plaintiff Johnson was ***maliciously prosecuted*** by the University of Houston, a state supported institution.

## COUNT TWENTY-ONE – FALSE ARREST

91.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 90.

92.     Not only was Plaintiff Johnson maliciously prosecuted, but he was **falsely arrested** for exercising his constitutional right, ***"freedom of speech."*** A claim of false arrest implicates guarantees of the Fourth and Fourteenth Amendments and, therefore, is actionable under 42 U.S.C.A.§ 1983. *See Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299,1305 (5th Cir. 1995); *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992); *Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir. 1988). Under Texas law, to establish the intentional tort of false arrest, the plaintiff must show (1) willful detention, (2) without consent, and (3) without authority of law. *See Har v. O'Brient,* 127 F.3d 424, 450 (5th Cir. 1997); *Pete v. Metcalfe*, 8 F.3d 214, 218 (5th Cir. 1993); *Gladden v. Roach*, 864 F.2d 1196, 1201 (5th Cir.), cert. denied, 491 U.S. 907, 105 L. Ed. 2d 700, 109 S. Ct. 3192 (1989); *Garza v.*

*United States,* 881 F. Supp. 1103, 1107 (S.D. Tex. 1995); *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex. 1985).

93.     Besides that, Plaintiff Johnson was **illegally detained** without his consent and without authority of law; Plaintiff Johnson was **deprived of his Fourth Amendment** constitutional right to be free from **unfounded arrest**.    Clearly, the law and the facts regarding this case support Plaintiff Johnson's complaint of false arrest by the police officers of the University of Houston.

94.     The Fourth Amendment protects individuals from unfounded arrests by requiring reasonable grounds to believe a crime has been committed. *See Street v. Surdyka*, 492 F.2d 368, 372 (4th Cir. 1974).    The University of Houston officers **illegally arrested** Plaintiff Johnson because they lacked probable cause.    The officer lacked facts or circumstances within their knowledge that Plaintiff Johnson had committed any criminal activity. *United States v. Maslanka*, 501 F.2d 208, 212 (5th Cir. 1974) (*quoting Beck v. Ohio*, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964)).    He only said, "BOOOO!"

95.     As previously stated, the officers are not immune from suit or liability because they violated Plaintiff Johnson's Fourth Amendment rights.    For instance, Officer Rooney's **actions were unreasonable** because he and the other officers that arrested Plaintiff Johnson **lacked probable cause**.    If the official's conduct violated a clearly established law, the inquiry then becomes whether that conduct was objectively reasonable. *See Brown*, 188 F.3d at 579; *Wren v. Towe*, 130 F.3d 1154, 1159 (5th Cir. 1997). The reasonableness inquiry turns on whether the official's actions "could reasonably have been thought consistent with the rights they are alleged to have violated." *Id*.    Likewise, Plaintiff Johnson was not arrested under the authority of warrant nor any probable cause that he committed a crime.    He was arrested due to the fact, he exercised his freedom of speech and not a violation of the law.

## COUNT TWENTY-TWO – BREACH OF CONTRACT

96.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 95.

97.     On February 7, 2005, Plaintiff Johnson and the University of Houston executed a written contract.     Plaintiff Johnson and Captain Miller, an agent for the University of Houston, contracted for the following: room charge ($150.00), late closing ($60.00), audio visual personnel ($140.00), the services of six (6) U of H Police Officer ($840.00), and the services of the U of H Police Supervisor for six (6) hours ($216.00). For these services, Plaintiff Johnson tendered a cashier's check in the amount of $1,406.00.  Plaintiff Johnson fully performed his contractual obligations.

98.     However, on the night of March 5, 2005, Captain Miller, Officer John Rooney, Officer Vega, Officer Gabriel McCourtney, the University of Houston and the University of Houston Chancellor did not perform their contractual obligations with Plaintiff Johnson.  Specifically, the officers refused to go by the floor plan that Plaintiff Johnson and Captain Miller had agreed to. Plaintiff was forced to pay for additional officers, after Captain Miller explained to him the necessity and anticipated attendees.  Based on this information, Plaintiff Johnson paid for six (6) officers; however, only five (5) showed up, and one (1) of these officers left during the party. Also, Plaintiff Johnson paid a late fee charge which was pointless due to the fact the party was shut down.

99.     The fact that the officers' failed to comply with the floor plan to guard the side doors resulted in the two (2) men attempt to enter on the side door without paying.   After the officers had given an exhausting chase and finally an arrest of the two (2) individuals,   the officers used this incident as an excuse to shut down the party. It should be noted that the incident with the two (2) individuals occurred *outside the party* and not inside of it.

100.     The officers totally ignored the contract that had been agreed to by Plaintiff Johnson and Captain Miller, a representative of the University of Houston.   Clearly, the University of Houston agents breached the contract that was entered into with Plaintiff Johnson and the University of Houston.

101.     It is well accepted that, the elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and, in the case of a written contract, (5) execution and delivery of the contract with the intent that it be mutual and binding. *Baroid Equip., Inc. v. Odeco Drilling, Inc.,* 184 S.W.3d 1, 17 (Tex. App. 2005) *(citing Prime Prods., Inc. v. S.S.I. Plastics, Inc.,* 97 S.W.3d 631, 636 (Tex. App.--Houston [1st Dist.] 2002, pet. denied); *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.--San Antonio 1999, pet. denied)). The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind. *Baroid Equip., Inc. v. Odeco Drilling, Inc.,* 184 S.W.3d 1, 17(Tex. App. 2005) *(citing Copeland,* 3 S.W.3d at 604).

102.     It is quite obvious that the University of Houston **breached** its contract with Plaintiff Johnson because U of H failed to provide Plaintiff Johnson with all the services for which he had paid.   The breach occurred when the officers failed to comply with the floor plan for services that were agreed upon by the agents for the University of Houston.      A **breach of a contract** occurs when a party fails or refuses to perform an act or thing that he has expressly or impliedly promised to do. *Fidelity & Deposit Co. v. Stool,* 607 S.W.2d 17, 24 (Tex. App. 1980) (citing *Crutcher-Rolfs-Cummings v. Ballard*, 540 S.W.2d 380, 386 (Tex.Civ.App.-Corpus Christi 1976, writ ref'd n.r.e.); *Provident Savings Life Assurance Society of New York v. Ellinger*, 164 S.W. 1024, 1026 (Tex.Civ.App.-Austin 1913, writ ref'd)).      As previously stated, Plaintiff Johnson complied with the terms of the contract and the University of Houston failed to honor its part of the agreement.   Plaintiff Johnson is entitled to damages.

## COUNT TWENTY-THREE - 1983 CLAIM

103.    Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 102.

104.    Additionally, the University of Houston officers, while acting within their official capacity, deprived Plaintiff Johnson of his constitutional rights to be free from **unfounded arrest and bad faith prosecution**. A claim of false arrest implicates guarantees of the Fourth and Fourteenth Amendments and, therefore, is actionable under § 1983. *See Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299,1305 (5th Cir. 1995); *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992); *Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir. 1988). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *See Blessing v. Freestone,* 520 U.S. 329, 340, 137 L. Ed. 2d 569, 117 S. Ct. 1353 (1997); *Daniels v. Williams*, 474 U.S. 327, 330, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986); *Augustine v. Doe*, 740 F.2d 322, 324-25 (5th Cir. 1984).

105.    Officers arrested Plaintiff Johnson without probable cause. They acted intentionally and not out of negligence. Plaintiff Johnson was arrested for merely saying "BOOO!" However, the officers intentionally fabricated the offense report to make it seem that Plaintiff Johnson incited a riot.

106.    All of the University of Houston officers, who were present at the party, knew Plaintiff Johnson did not engage in criminal activity by saying "BOOO!" Plaintiff Johnson was arrested because he did not want to tell his paying customers to go home before the conclusion of the event. Clearly, the arrest was unfounded; plus, it exhibited bad faith prosecution.

## COUNT TWENTY-FOUR - LIBEL

107.    Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 106.

108.    Arguably, Plaintiff Johnson was **defamed** by the officers and **illegally arrested** for a crime he did not commit. Under Texas law, libel "is written or printed defamation which tends to injure the reputation of a living person and thus expose him to public hatred, contempt, ridicule, or financial injury, or impeach his honesty, integrity, virtue, or reputation." *Halbert v. City of Sherman*, 33 F.3d 526, 530 (5th Cir. 1994).

109.    Officer Rooney **falsified the report**.  Officer Rooney reported that the party was shut down due to all the fights that had occurred at the party.  However, the party was shut down because the officers did not want to detail the party.

110.    Officer Rooney **falsely reported** that Plaintiff Johnson stated several times to the crowd, ***"Boo, don't go,"*** causing the crowd to rush toward the stage where the officers were standing.

111.    Two (2) U of H employees reported in an email that the event ended before the scheduled time and that the ***"police arrested the DJ because he said something over the microphone that he was not supposed to say (as the police were ending the show, the DJ made a sound like BOOO! because of that the police arrested him."*** .

112.    As a result of the illegal arrest, Plaintiff Johnson's reputation has been damaged.  Prior to this event, Plaintiff Johnson had never been arrested.

113.    Plaintiff Johnson was **falsely arrested** in front of a crowd of people.  Because of this, his event did not succeed as others have in the past.

114.    Plaintiff Johnson's reputation with U of H has been tainted.  Plaintiff Johnson had hosted other parties on U of H's campus where no problems had ever occurred.  Plaintiff Johnson's arrest tainted his rapport with U of H.

115.    The officers **disregarded the falsity** of the offense report, and therefore, the officers cannot assert privileged communication. "The Fifth Circuit has noted that in cases of libel and slander, Texas has long recognized at least a qualified privilege for the communication of alleged wrongful acts to an official authorized to protect the public from such acts." *Campbell v. San*

*Antonio*, 43 F.3d 973, 980 (5th Cir. 1995). "The effect of such privilege is to justify the communication when it was made with proper motives and without actual malice. The communication is privileged unless made with knowledge that it was false or with reckless disregard for whether it was false." *Campbell v. San Antonio*, 43 F.3d 973, 980 (5th Cir. 1995).

116.    The officers who were to provide security at Plaintiff Johnson's party expressed to Plaintiff Johnson and others that they did not want to be there, particularly Officer Vega.

117.    The officers were not in their respective and requested positions for the majority of the night.  Officer Rooney was present at the party.  He knew that Plaintiff Johnson did not incite the crowd to rush the stage, because plaintiff was arrested the moment ***BOOO!*** came out of his mouth.

118.    It is quite obvious that the officers arrested Plaintiff Johnson without probable cause and needed to justify their actions by falsifying the report.  Not only was Plaintiff Johnson arrested, but three other students were arrested as well.

119.    One (1) of the female students, prior to and during her arrest told Officer Rooney that her father was an attorney and that she knew her rights.   According to the offense report, this student interfered with the arrest of another student by hitting and cursing Officer Rooney.   The female student continued to threaten the officer with a lawsuit for the illegal arrest, during the transport to the U of H Police Department.

120.     Both female students had committed the following criminal offenses:   Disorderly Conduct, Resisting Arrest, Assault on a Peace Officer and Interference with a Public Official.  Nevertheless, both were released by the Officer Rooney.   Officer Rooney noted in his offense report that *"at **his discretion**, he decided to release the ladies."*  It is quite obvious, that not only did Officer Rooney illegally arrest the female students, but Plaintiff Johnson, as well.

**COUNT TWENTY-FIVE –QUANTUM MERUIT**

120.    Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 119.

121.    Pleading not in the alternative, and without waiving any of the foregoing, Plaintiff will show that the Defendants have received the use of the benefit of the services, goods, wares, and merchandise provided and is thereby indebted to Plaintiff in quantum meruit.   Defendant has accepted the goods, wares and merchandise and is obligated by the law to pay a reasonable value for the services received by it, or Defendants will be unjustly enriched if allowed to retain the benefit conferred upon it by Plaintiff without payment to Plaintiff.   Plaintiff alleges and believes the reasonable value of his services, the goods, wares and merchandise provided to be in the sum of $1,406.00 plus any and all additional punitive damages, for which amount Plaintiff hereby sues Defendant, together with interest at the highest non-usurious rate allowed by law.

## COUNT TWENTY-SIX - DAMAGES

122.    As a proximate result of Defendants' conduct, Plaintiff has suffered damages, including special damages such as loss profits, in a sum in excess of the jurisdictional limits of this court, exclusive of interest and costs.

123.    Defendants' conduct was intentional, willful, wanton, malicious, and without justification or excuse thereby entitling Plaintiff to an award of exemplary damages to be determined by the trier of fact.

124.    There was a recognized special relationship between the Plaintiff and the Defendants that would provide an appropriate basis for awarding Plaintiff mental anguish damages.   Mental anguish damages, without any physical injury, are only recoverable when there is a breach of duty arising out of certain special relationships.   *City of Tyler v. Likes,* 962 S.W.2d 489, 494 (Tex. 1997).

125.    Special relationships include the physician-patient relationship, insurer-insured, and a very limited number of contracts dealing with intensely emotional noncommercial subjects.

*Lions Eye Bank of Texas v. Perry*, 56 S.W.3d 872, 877-78 (Tex. App. – Houston [14th Dist.] 2001, pet. denied). A special relationship can give rise to mental anguish damages if: (1) there is a contractual relationship between the parties; (2) there is a particular susceptibility to emotional distress on the part of the plaintiff; and (3) the defendant knows about plaintiff's particular susceptibility to the emotional distress based on the circumstances. *Id; City of Dallas v. Brown*; 150 S.W.2d at 131 (stating that a contracting party must have contemplated mental suffering from breach of contract). Plaintiff is required to plead that a breach of the contract should have been reasonably foreseen by the Defendants and the Defendants should have known that its breach would cause Plaintiff to suffer mental anguish. *See e.g., Delgaldo v. Methodist Hospital*, 936 S.W.2d 479, 485-86 (Tex. App. –Houston [14th Dist] 1996, no pet.). Plaintiff's pleads that he is within the exception to the general rule regarding the recovery of mental anguish damages for breach of the contract.

126.    As such, as a matter of law, Plaintiff's claim for mental anguish damages is within merit and should be granted.

**WHEREFORE**, Plaintiff request that this Court enter judgment against the defendants and award the following amounts:

a.      $500,000.00 compensatory damages in favor of plaintiff;

b.      $1,000,000.00 actual damages in favor of plaintiff;

c.      $6,000,000.00 punitive damages in favor of plaintiff;

d.      $1,500,000.00 exemplary damages in favor of plaintiff;

e.      Costs of this action, including reasonable attorney fees to the plaintiff; and

f.      Such other and further relief as the court may deem appropriate.

Respectfully submitted,

The Craig Washington Law Firm
1000 The Houston Building
2323 Caroline Street
Houston, Texas   77004
Tel:   713-659-9090
Fax:  713-659-2812

_____/S/ Craig A. Washington_____
CRAIG A. WASHINGTON
Texas Bar No. 20901000
Attorney-in-Charge
ANGELA L. HARRINGTON
Texas Bar No. 24057605
BEVERLY D. MELONTREE
Texas Bar No. 13922100

ATTORNEY FOR THE PLAINTIFFS

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure plaintiffs demand a trial by jury.

_____/S/ Craig A. Washington_____
CRAIG A. WASHINGTON
Attorney for the Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that on September 28, 2007 a true and exact copy of the foregoing **Complaint** was filed electronically and delivered via ECF to the following parties:

Hon. Greg Abbott, Esq.
Hon. Kent C. Sullivan, Esq.
Hon. David S. Morales, Esq.
Hon. Robert B. O'Keefe, Esq.
Hon. William T. Deane
P.O. Box 12548
Capitol Station
Austin, Texas 78711

_____/S/ Craig A. Washington_____
CRAIG A. WASHINGTON